UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

OOCL (USA) CORP.,

         Plaintiffs,

-v-

TRANSCO SHIPPING CORP., *et uno*,

         Defendants.

No. 13-cv-5418 (RJS)
OPINION AND ORDER

RICHARD J. SULLIVAN, District Judge:

  Ocean carrier OCCL (USA) Corp. ("Plaintiff") brings this breach of contract action to recover demurrage and detention fees from Transco Shipping Corp. ("Defendant") resulting from Defendant's alleged failure to unload cargo from Plaintiff's vessel when it arrived in New York. Now before the Court is Defendant's motion for summary judgment to dismiss Plaintiff's First Amended Complaint. For the following reasons, the motion is granted in part and denied in part.

I. Background[1]

  In 2008, Orient Star Transport International Limited ("Orient Star") entered into a contract with Plaintiff, whereby Plaintiff agreed to transport cargo from China to New York. (Defendants' Rule 56.1 Reply, Doc. No. 44 ("Def. 56.1 Reply"), ¶ 1.) Orient Star also contracted with Defendant, whereby Defendant agreed to act as Orient Star's agent in New York. (*Id.* ¶ 6.)

---

[1] The following facts are taken from the parties' Local Civil Rule 56.1 Statements, the declarations submitted in connection with the instant motion, and the exhibits attached thereto. Unless otherwise noted, where one party's 56.1 Statement is cited, the other party does not dispute the fact asserted, has offered no admissible evidence to refute that fact, or merely objects to inferences drawn from that fact. In deciding this motion, the Court also considered Defendants' memorandum of law in support of its motion (Doc. No. 30 ("Mem.")), Plaintiff's memorandum of law in opposition to the motion (Doc. No. 36 ("Opp'n")), and Defendants' reply brief (Doc. No. 43 ("Reply")).

Plaintiff then issued three bills of lading[2] to Orient Star, listing Defendant as the "consignee"[3] and "notify party" on the reverse side of each bill of lading. (*Id.* ¶¶ 5, 7–8.) The reverse side of each bill of lading also stated that a "consignee" is considered a "merchant" who will be held "jointly and severally liable for all freight and charges," including demurrage, detention, and destination charges arising from the bill of lading.[4] (Declaration of Vincent DiSanto, dated Aug. 18, 2014, Doc. No. 37 ("DiSanto Decl."), ¶¶ 15–16 & Ex. 5.) After the cargo left China but before it arrived in New York, Orient Star emailed copies of the front of the bills of lading to Defendant. (Def. 56.1 Reply ¶ 9.) Subsequently, Orient Star sent Defendant the original copies of the three bills of lading, including the reverse side. (*Id.* ¶ 10.)

When the cargo arrived in New York, Defendant signed and endorsed at least two of the three bills of lading and presented them to Plaintiff, who subsequently released the cargo to Defendant. (*Id.* ¶¶ 13, 15.) Defendant notified the third-party buyer ("Buyer") of the arrival of the cargo, but never spoke to the Buyer. (*Id.* ¶ 11.) Defendant later learned that the Buyer had gone out of business. (*Id.*) The cargo thus remained unclaimed, sitting on Plaintiff's vessel in New York, while demurrage and detention fees accrued.

On November 1, 2010, Plaintiff commenced this action in New York State Supreme Court, New York County, seeking payment of the demurrage and detention fees from Defendant for its

---

[2] A bill of lading is a maritime contract that "records that a carrier has received goods from the party that wishes to ship them, states the terms of carriage, and serves as evidence of the contract for carriage." *Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 18–19 (2004).

[3] The consignee is the receiver of the shipment. *See Black's Law Dictionary* 373 (10th ed. 2014) (defining a consignee as the "person named in a bill to whom or to whose order the bill promises delivery").

[4] Demurrage and detention fees are essentially liquidated damages that accrue when cargo is not unloaded from a ship at the agreed upon time. *See Black's Law Dictionary* 526; *Evergreen Marine Corp. v. Welgrow Int'l Inc.*, 954 F. Supp. 101, 102 (S.D.N.Y. 1997). "Demurrage is a standard fee associated with shipping through common carriers; so much so that courts have found it to be an implied term in maritime contracts." *Mediterranean Shipping Co. (USA) v. Cargo Agents, Inc.*, No. 10-cv-5070 (THK), 2011 WL 6288422, at *4 (S.D.N.Y. Dec. 15, 2011).

failure to unload the cargo from Plaintiff's vessel at the agreed upon time, in violation of each bill of lading. (Doc. No. 1.) On August 2, 2013, this action was removed to federal court. (*Id.*) In the First Amended Complaint, Plaintiff asserts claims against Defendant for breach of contract, failure to pay an account stated, and unjust enrichment.[5] (Doc. No. 35.) Defendant moved for summary judgment on all of Plaintiff's claims on July 20, 2014. (Doc. No. 30.) The motion was fully briefed on September 2, 2014.

II. STANDARD OF REVIEW

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment should be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is "no genuine dispute as to any material fact" where (1) the parties agree on all facts (that is, there are no disputed facts); (2) the parties disagree on some or all facts, but a reasonable fact-finder could never accept the nonmoving party's version of the facts (that is, there are no genuinely disputed facts), *see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); or (3) the parties disagree on some or all facts, but even on the nonmoving party's version of the facts, the moving party would win as a matter of law (that is, none of the factual disputes are material), *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In determining whether a fact is genuinely disputed, the court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996). Nevertheless, to show

---

[5] In the First Amended Complaint, Plaintiff originally asserted a single claim against Defendant Transco Shipping Logistics Corp. Plaintiff withdrew this claim in its opposition to the motion for summary judgment. (Opp'n at 3 n.1.) Accordingly, Transco Shipping Logistics Corp. is dismissed from this action.

3

a genuine dispute, the nonmoving party must provide "hard evidence," *D'Amico v. City of N.Y.*, 132 F.3d 145, 149 (2d Cir. 1998), "from which a reasonable inference in [its] favor may be drawn," *Binder & Binder PC v. Barnhart*, 481 F.3d 141, 148 (2d Cir. 2007) (internal quotation marks omitted). "Conclusory allegations, conjecture, and speculation," *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998), as well as the existence of a mere "scintilla of evidence in support of the [nonmoving party's] position," *Anderson*, 477 U.S. at 252, are insufficient to create a genuinely disputed fact. A moving party is "entitled to judgment as a matter of law" on an issue if (1) it bears the burden of proof on the issue and the undisputed facts meet that burden; or (2) the nonmoving party bears the burden of proof on the issue and the moving party "'show[s]' – that is, point[s] out . . . – that there is an absence of evidence [in the record] to support the nonmoving party's [position]," *see Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). When interpreting terms in a contract, a court may grant a motion for summary judgment "where the agreement's language is unambiguous and conveys a definite meaning." *Sayers v. Rochester Tel. Corp. Supplemental Mgmt. Pension Plan*, 7 F.3d 1091, 1094 (2d Cir. 1993).[6]

### III. Discussion

#### A. Breach of Contract

Defendant argues that it is entitled to summary judgment on Plaintiff's breach of contract claim because (i) it was not a party to the three bills of lading, and (ii) even if it were a party, its mere designation as a consignee on the reverse side of the bills of lading is insufficient to make it liable for demurrage and detention fees, since it never demanded delivery of the cargo and it did not have notice of the provisions on the reverse side.

---

[6] The Court applies federal law when interpreting the bills of lading for a shipment between China and New York. *See Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 22–23 (2004) ("When a contract is a maritime one, and the dispute is not inherently local, federal law controls the contract interpretation."). In addition, "contracts for carriage of goods by sea must be construed like any other contracts: by their terms and consistent with the intent of the parties." *Id.* at 31.

As an initial matter, the undisputed record suggests that Defendant accepted, signed, and endorsed at least two of the bills of lading when the cargo arrived in New York. (*See* Def. 56.1 Reply ¶¶ 13, 15; DiSanto Decl. Exs. 1–2 (showing Defendant's endorsement of two of the bills of lading).) Clause 28 of each bill of lading states:

> NOTICE TO ENDORSEE AND/OR HOLDER AND/OR TRANSFEREE: By taking up this Bill of Lading, whether by endorsement and/or becoming a holder and/or by transfer hereof and/or by presenting this Bill of Lading to obtain delivery of the Goods herein and/or otherwise, *the endorsee/holder/transferee thereupon become[s] a party to a contract of carriage* with the carrier on the basis herein.

(DiSanto Decl. Ex. 5 (emphasis added).) Thus, by signing and endorsing two of the bills of lading and presenting them to Plaintiff, Defendant would have become contractually obligated under the terms of the bills of lading. Defendant argues that its mere endorsement of the bills of lading is insufficient to make it a party to the contract because it endorsed the bills *before* the cargo was delivered. However, Defendant offers no authority for this statement and its reliance on *Crossman v. Burrill*, 179 U.S. 100 (1900), is misplaced as that case considered whether a charterer had to pay demurrage fees to a shipowner in light of a specific contractual provision that is not present here. Furthermore, an entity can become a party to a contract and liable for freight charges even if it never received delivery of the cargo shipped. *See Nippon Yusen Kaisha v. FIL Lines USA Inc.*, 977 F. Supp. 2d 343, 347, 351 (S.D.N.Y. 2013).

With respect to the third bill of lading, Vincent DiSanto, Manager of Regulatory and Process for Plaintiff, avers that he was unable to locate the original bill of lading that had Defendant's endorsement. (DiSanto Decl. ¶ 7.) However, DiSanto asserts that Defendant endorsed the third bill of lading and that Plaintiff "would not have released the cargo transported . . . without first receiving an original bill of lading endorsed by the consignee, defendant Transco Shipping." (*Id.* ¶ 9.) In contrast, Defendant argues that DiSanto's failure to produce the third original bill of lading suggests that it was not a party to the contract and is not

5

liable for any demurrage or detention fees related to that cargo. (Reply at 4–5.) Thus, whether Defendant endorsed the third bill of lading and therefore became a party to the contract presents a genuine issue of material fact, which precludes summary judgment.

Even assuming that Defendant is a party to the bills of lading, Defendant next argues that its mere designation as a consignee of the cargo on the bills of lading is insufficient to make it liable for demurrage and detention fees since it never accepted or demanded delivery of the cargo. (Mem. at 4–5.) However, whether a party accepted or demanded delivery is irrelevant to an analysis of whether a party is liable for demurrage and detention fees when, as here, a contract expressly provides that a party is liable. *See A/S Dampskibsselskabet Torm v. Beaumont Oil Ltd.*, 927 F.2d 713, 717–18 (2d Cir. 1991) (stating that a consignee can become liable for freight charges through a binding contractual obligation); *States Marine Int'l, Inc. v. Seattle-First Nat'l Bank*, 524 F.2d 245, 248 (9th Cir. 1975) (same); *In re M/V Rickmers Genoa Litig.*, 622 F. Supp. 2d 56, 70 (S.D.N.Y. 2009) (noting that "determining whether a third-party buyer or consignee was actually bound to a bill of lading is a matter of contract construction and must be accomplished by examining the terms of bills of lading"), *aff'd sub nom., Chem One, Ltd. v. M/V Rickmers Genoa*, 502 F. App'x 66 (2d Cir. 2012). For example, in *MTS Logistics, Inc. v. Stone Tile Direct, LLC*, the court held that a defendant, who was listed as a consignee and a merchant on a bill of lading, was jointly and severally liable for damages based on the express terms of the contract because "the consignee can become liable for the shipping costs where it has a binding statutory or contractual obligation to pay the freight charges." No. 10-cv-7312 (PAC), 2012 WL 1056333, at *2–3 (S.D.N.Y. Mar. 27, 2012). Here, the reverse side of each bill of lading expressly provides that Defendant is the "consignee" of the cargo and further notes that Defendant, as a consignee, is also considered a "merchant" who is "jointly and severally liable for all freight and charges due

under this Bill of Lading." (DiSanto Decl. ¶¶ 15–16 & Ex. 5.) *See Nippon Yusen Kaisha v. FIL Lines USA Inc.*, 977 F. Supp. 2d 343, 349–51 (S.D.N.Y. 2013) (noting that a bill of lading with nearly identical language to the bills of lading in the present case "convey[s] a clear and definite meaning" and "specifically make[s defendant] liable for the payment of the freight charges based on its status as a consignee").

Despite these express provisions, Defendant still argues that it is not be liable for demurrage and detention fees because it never demanded delivery of the cargo as supposedly required by the terms on the front of the bills of lading. (Mem. at 6–7.) The front of each bill of lading states that: "DESTINATION CHARGES COLLECT PER LINE TARIFF, AND TO BE COLLECTED FROM THE PARTY WHO LAWFULLY DEMANDS DELIVERY OF THE CARGO." (Def. 56.1 Reply ¶ 20.) Although Plaintiff contends that Defendant demanded delivery when it presented the signed and endorsed bills of lading to Plaintiff, Defendant argues that its presentation of the signed and endorsed bills of lading did not constitute a demand for delivery, but was merely a transfer of Defendant's right to demand delivery to Plaintiff. (Reply at 4.) Defendant is mistaken.

When a party presents a signed and endorsed bill of lading to a carrier, it demands delivery of the cargo, since the party's actions cause the carrier to release the cargo to the party. *Cf. Datas Indus. Ltd. v. OEC Freight (HK), Ltd.*, No. 98-cv-6904 (JSM), 2000 WL 1597843, at *3 (S.D.N.Y. Oct. 25, 2000) ("Absent a valid agreement to the contrary, the carrier, the issuer of the bill of lading, is responsible for releasing the cargo only to the party who presents the original bill of lading . . . . If the carrier delivers the goods to one other than the authorized holder of the bill of lading, the carrier is liable for misdelivery." (citation and internal quotation marks omitted)); (*see also* DiSanto Decl. ¶¶ 5, 9 (noting that Defendant presented the bills of lading to Plaintiff to obtain

delivery of the cargo)). Here, Defendant's presentation of the signed and endorsed bills of lading to Plaintiff did not constitute a mere transfer of the right to demand delivery; indeed, to argue otherwise would make no sense, since it would logically require Plaintiff, an ocean carrier, to demand delivery of cargo that it already had on board its vessel. Obviously, Defendant's presentation of the bills of lading to Plaintiff constituted a demand for delivery of the cargo which enabled Defendant to authorize release of the cargo to the Buyer.

Finally, Defendant argues that it should not be bound by the express terms of the bills of lading because it never agreed to or received notice of the provisions on the back of the bills of lading, which were in "microscopic size print." (Mem. at 9.) *See APL Co. Pte. v. Kemira Water Solutions, Inc.*, 890 F. Supp. 2d 360, 366 (S.D.N.Y. 2012) ("[A] party cannot unilaterally bind another party to a contract by capturing them within a term defined in that contract."). However, even before Defendant endorsed the two bills of lading, Defendant had several opportunities to read and understand the provisions on the reverse side of the bills of lading. For example, the front of each bill of lading noted that the terms on the reverse side of the bills of lading were available at www.oocl.com. (*See* DiSanto Decl. Exs. 1–2.) Plaintiff also published an ocean tariff,[7] which was available on www.oocl.com, that included the terms on the reverse side of the bills of lading. (*Id.* ¶ 11 & Ex. 5.) Defendant even published an ocean tariff that similarly defined merchants as consignees who are liable for freight charges. (Declaration of Mark L. McKew, dated Aug. 18, 2014, Doc. No. 35 ("McKew Decl."), Ex. 5.) Thus, whether Defendant had notice of the provisions on the reverse side of the bills of lading presents, at the very least, a disputed issue of material fact.

Accordingly, after considering the arguments presented, it is apparent that questions of material fact remain as to whether Defendant endorsed the third bill of lading and whether

---

[7] Plaintiff publishes an ocean tariff, which lists the terms on the reverse side of its bills of lading, among other things, in compliance with the regulations of the Federal Maritime Commission. (DiSanto Decl. ¶ 11.)

Defendant had notice of the terms on the reverse side of all three bills of lading. Therefore, Defendant's motion for summary judgment on the breach of contract claim must be denied.

### B. Account Stated

An account stated "refers to a promise by a debtor to pay a stated sum of money which the parties had agreed upon as the amount due." *White Diamond Co. v. Castco, Inc.*, 436 F. Supp. 2d 615, 623 (S.D.N.Y. 2006). Here, the account stated refers to the three bills of lading that Plaintiff issued. Defendant's sole argument for summary judgment on the account stated claim rests on a single, conclusory sentence that it cannot be liable for an account stated because it was not liable under the three bills of lading. (Mem. at 10.) However, because the Court has already found that there are genuine issues of material fact with respect to Defendant's liability under the three bills of lading, Defendant's motion for summary judgment on the account stated claim is also denied.

### C. Unjust Enrichment

"The basic elements of an unjust enrichment claim in New York require proof that (1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover." *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir. 2004). Defendant argues that it is entitled to summary judgment on the unjust enrichment claim because Plaintiff failed to produce any evidence that Defendant benefited at Plaintiff's expense. (Mem. at 10.) While Plaintiff agrees that no evidence has been produced to support an unjust enrichment claim, Plaintiff claims that it was unable to gather evidence because Li Huang Liu, Defendant's President, "refused to testify as to financial and qualitative aspects of" Defendant and Defendant refused to give the name of its accountant "until the eve of the discovery closure." (McKew Decl. ¶ 17.) On June 18, 2014, the Court held a post-discovery conference, and Plaintiff indicated that it wanted to know the name of Defendant's accountant so that Plaintiff could see Defendant's tax returns and learn about the

9

number of shipments Defendant made each year. (Hearing Transcript (Doc. No. 47) at 18:23–19:5.) In response, the Court extended the discovery deadline for two additional weeks and ordered Defendant to disclose the name of its accountant. (*Id.* at 22:8–12.) Plaintiff does not allege that Defendant failed to comply with that order before the discovery deadline, nor does Plaintiff assert that it noticed the accountant's deposition or requested an additional extension of the discovery deadline for the purpose of conducting further depositions prior to the close of discovery. Accordingly, after already extending the discovery deadline twice (*see* Doc. Nos. 19, 28), the Court declines to reopen discovery. Therefore, because Plaintiff has acknowledged that it has offered no evidence to support its unjust enrichment claim, the Court grants Defendant's motion for summary judgment with respect to Plaintiff's unjust enrichment claim.

IV. CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED THAT the Court DENIES Defendant's motion for summary judgment on the breach of contract and account stated claims and GRANTS Defendant's motion for summary judgment on the unjust enrichment claim. The Clerk of the Court is respectfully directed to terminate the motion located at docket number 30. In addition, because Plaintiff has withdrawn its sole claim against Defendant Transco Shipping Logistics Corp., the Clerk of the Court is respectfully directed to terminate Defendant Transco Shipping Logistics Corp. from this action.

SO ORDERED.

Dated:   March 11, 2015
         New York, New York

RICHARD J. SULLIVAN
UNITED STATES DISTRICT JUDGE