UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/23/15

OOCL (USA) INC.,

                      Plaintiff,

-v-

TRANSCO SHIPPING CORP.,

                      Defendant.

No. 13-cv-5418 (RJS)
OPINION AND ORDER

RICHARD J. SULLIVAN, District Judge:

      Plaintiff OOCL (USA) Inc. brings this action for breach of contract and account stated against Defendant Transco Shipping Corp. to recover demurrage and detention fees that Plaintiff incurred while cargo sat unclaimed on its vessel in the Port of New York. Having presided over a bench trial in this action, the Court issues the following findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a). For the reasons set forth below, the Court finds Defendant liable for breach of contract, but dismisses Plaintiffs' account stated claim as duplicative of the breach of contract claim. Accordingly, the Court hereby enters judgment for Plaintiff and awards it damages in the amount of $57,473, plus prejudgment interest, reasonable attorney's fees, and costs.

I. PROCEDURAL HISTORY

      On November 1, 2010, Plaintiff commenced this action in New York state court, and, on August 2, 2013, this action was removed to federal court. (Doc. No. 1.) Subsequently, Plaintiff filed its First Amended Complaint, asserting claims against Defendant and Transco Shipping

Logistics Corp. for breach of the three bills of lading[1] at issue in this case, failure to pay an account stated, and unjust enrichment. (Doc. No. 35, Ex. 1 ("FAC").) Plaintiff sought damages in the amount of $58,490, plus prejudgment interest, reasonable attorney's fees, and costs. (*Id.* ¶¶ 15, 19, 23.)

On July 20, 2014, Defendant moved for summary judgment on all of Plaintiff's claims. (Doc. No. 30.) On August 19, 2014, Plaintiff filed an opposition to Defendant's summary judgment motion and withdrew all of its claims against Transco Shipping Logistics Corp. (Doc. No. 36.) The motion was fully briefed on September 2, 2014. (Doc. No. 43.) On March 11, 2015, the Court denied Defendant's motion as to the breach of contract and account stated claims, finding that genuine issues of material fact remained as to whether Defendant endorsed the third bill of lading and whether it had notice of the terms on the reverse side of each bill of lading. (Doc. No. 51 ("March Opinion").) The Court nevertheless granted Defendant's summary judgment motion as to the unjust enrichment claim and formally dismissed Transco Shipping Logistics Corp. from this action. (*Id.*)

The Court conducted a bench trial on July 27, 2015 in order to resolve the issues of material fact on the remaining claims. Vincent DiSanto, Plaintiff's Manager of Regulatory and Process, testified on behalf of Plaintiff, and Lihuang Liu, Defendant's President, testified on behalf of Defendant. In addition, each party submitted a post-trial memorandum of law on August 31, 2015. (Doc. No. 83 ("Pl. Post-Trial Mem."); Doc. No. 84 ("Def. Post-Trial Mem.").)

---

[1] A bill of lading is a maritime contract that "records that a carrier has received goods from the party that wishes to ship them, states the terms of carriage, and serves as evidence of the contract for carriage." *Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 18–19 (2004).

II. LEGAL STANDARD

To prevail on its claims, Plaintiff must present evidence in support of the allegations set forth in the First Amended Complaint and prove those allegations by a preponderance of the evidence. *See Raymond v. Marks*, 116 F.3d 466 (2d Cir. 1997). "The burden of showing something by a preponderance of the evidence . . . simply requires the trier of fact to believe that the existence of a fact is more probable than its nonexistence." *Metro. Stevedore Co. v. Rambo*, 521 U.S. 121, 137 n.9 (1997) (internal quotation marks omitted). As the finder of fact, the Court is entitled to make credibility findings of the witnesses and testimony and to draw reasonable inferences from the evidence presented. *See Merck Eprova AG v. Gnosis S.p.A.*, 901 F. Supp. 2d 436, 448 (S.D.N.Y. 2012), *aff'd*, 760 F.3d 247 (2d Cir. 2014).

III. FINDINGS OF FACT[2]

In 2008, Orient Star International Ltd. ("Orient Star") provided Plaintiff's agent in China ("OOCL Shenzhen") with four containers of plasterboard that Plaintiff, an ocean carrier, agreed to transport from the port in Shenzhen, China to the Port of New York. (DiSanto Aff. ¶ 8.) Around the same time, Orient Star entered into an agency agreement with Defendant, whereby Defendant agreed to act as Orient Star's agent in the Port of New York to receive the containers. (Stip. ¶ 7.) On July 27, 2008, OOCL Shenzhen issued to Orient Star three original sets of three non-negotiable bills of lading with the numbers "OOLU2007690594" ("First BOL"), "OOLU2007690681" ("Second BOL"), and "OOLU2007690683" ("Third BOL"). (PX 3–4, 23 ("BOL"); Stip. ¶ 1.)[3]

---

[2] These factual findings are derived from the Stipulation of Facts listed on page 6 of the parties' Joint Pretrial Order (Doc. No. 57 ("Stip.")), the July 27, 2015 trial transcript ("Tr."), witness affidavits, Plaintiff's exhibits ("PX"), and Defendant's exhibits ("DX"). To the extent that any finding of fact reflects a legal conclusion, it shall to that extent be deemed a conclusion of law, and vice versa.

[3] Although Plaintiff found an original of the third bill of lading – identified as Plaintiff's Exhibit 23 – only one day before trial, Defendant agrees that Plaintiff's Exhibit 23 is an original copy of the third bill of lading. (Def. Post-Trial Mem. at 10.) Accordingly, the Court finds this bill of lading and the endorsement to be authentic.

Each bill of lading identified Defendant as the "consignee" and "notify party" on the front, and set forth a list of terms and conditions on the back.[4]  (Stip. ¶ 4.)  The terms and conditions included "consignee" within the definition of "merchant" and noted that all merchants would be held "jointly and severally responsible for all freight and charges due under this Bill of Lading." (BOL cls. 2, 15, 19(4).)  In addition, as explained in the bottom left corner on the front side of each bill of lading, the terms and conditions on the reverse side of each bill of lading were also available "at www.oocl.com, in OOCL's published U.S. tariffs, and in pamphlet form." (DiSanto Aff. ¶ 26.)

Once Plaintiff's vessel left China, Orient Star emailed the front side of each bill of lading to Defendant and then subsequently sent the complete original bills of lading to Defendant. (Stip. ¶¶ 8–9.)  The cargo eventually arrived in New York on August 25, 2008 and began incurring demurrage charges on August 29, 2008.[5]  (DiSanto Aff. ¶¶ 57–58; Tr. at 41:18–24.)  On October 8, 2008, Defendant signed and endorsed the First BOL and presented it to Plaintiff. (DiSanto ¶ 24.)  In addition, on October 21, 2008, Defendant signed and endorsed two sets of the remaining two bills of lading and presented them to Plaintiff.  (DiSanto ¶ 20.)  As explained in the Court's March Opinion, by endorsing and presenting each bill of lading, Defendant became a party to each bill of lading, pursuant to clause 28, which stated:

> NOTICE TO ENDORSEE AND/OR HOLDER AND/OR TRANSFEREE: By taking up this Bill of Lading, whether by endorsement and/or becoming a holder and/or by transfer hereof and/or by presenting this Bill of Lading to obtain delivery of the Goods herein and/or otherwise, *the endorsee/holder/transferee thereupon become[s] a party to a contract of carriage* with the carrier on the basis herein.

---

[4] The consignee is the receiver of the shipment.  *See Black's Law Dictionary* 373 (10th ed. 2014) (defining a consignee as the "person named in a bill to whom or to whose order the bill promises delivery").  A notify party is "the party to be notified when the goods arrive at their destination." *Dynamic Worldwide Logistics, Inc. v. Exclusive Expressions, LLC*, 77 F. Supp. 3d 364, 367 n.3 (S.D.N.Y. 2015) (internal quotation marks omitted).

[5] Demurrage and detention fees are essentially liquidated damages that accrue when cargo is not unloaded from a ship at the agreed upon time.  *See Black's Law Dictionary* 526; *Evergreen Marine Corp. v. Welgrow Int'l Inc.*, 954 F. Supp. 101, 102 (S.D.N.Y. 1997).

(BOL cl. 28 (emphasis added); March Opinion at 5.) After endorsing and presenting each bill of lading, Defendant notified the third-party buyer of the arrival of the cargo. (Liu Aff. ¶ 21.) However, Defendant did not receive a response, likely because the third-party buyer had gone out of business. (*Id.*) As a result, since neither Defendant nor any other entity took physical possession of the cargo, Plaintiff continued to incur demurrage charges for the unclaimed cargo. (Stip ¶ 6; DiSanto Aff. ¶ 54; Liu Aff. ¶¶ 22–23.)

On or about October 14, 2008, Plaintiff transported the unclaimed cargo related to the First BOL to the truck terminal of Plaintiff's salvaging agent, BK Logistics Solutions Inc. ("BK Logistics"), where the cargo incurred reduced detention charges. (DiSanto Aff. ¶ 57.) Subsequently, on October 21, 2008, Plaintiff transported the unclaimed cargo related to the remaining two bills of lading to BK Logistics's truck terminal. (*Id.* ¶ 58; Tr. at 41:25–42:3.) On November 14, 2008, BK Logistics sold the cargo as "sheet rock salvage" to American Excess, a salvage company, for a total of $3,547. (PX 18; Tr. at 42:22–43:3) As a result, Plaintiff stopped incurring demurrage and detention charges that same day. (DiSanto ¶ 66.) However, prior to the sale to American Excess, Plaintiff had sustained a total of $58,490 in demurrage and detention charges. (*Id.* ¶¶ 60–65; PX 11–17.)

On June 23, 2010, Plaintiff delivered to Defendant an invoice requesting payment of $58,490, which Defendant has not yet paid. (DiSanto Aff. ¶ 65; PX 17.) On May 3, 2013, after deducting costs incurred during the sale of the unclaimed cargo, BK Logistics remitted $1,017 to Plaintiff for the cargo sale, and Plaintiff deposited that amount into its account by applying the invoice across the three bills of lading at issue in this case and one other unrelated bill of lading. (PX 25[6]; Tr. at 23:19–25, 51:5–52:9, 56:12–25.)

---

[6] Defendant objects to the admissibility of Plaintiff's Exhibit 25, which is a receipt indicating that BK Logistics remitted $1,017 to Plaintiff, on the grounds that it (i) is not authentic since it was presented on the eve of trial and (ii)

IV. CONCLUSIONS OF LAW

A. Jurisdiction

The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1333(1), which provides district courts with original jurisdiction over "[a]ny civil case of admiralty or maritime jurisdiction." The Court has supplemental jurisdiction over the state law account stated claim pursuant to 28 U.S.C. § 1367(a). Venue in the Southern District of New York is proper under 28 U.S.C. § 1391.

B. Breach of Contract

Federal courts apply federal common law when interpreting bills of lading for transoceanic shipments like the one here. *See Norfolk*, 543 U.S. at 22–23 ("When a contract is a maritime one, and the dispute is not inherently local, federal law controls the contract interpretation."). In addition, "contracts for carriage of goods by sea must be construed like any other contracts: by their terms and consistent with the intent of the parties." *Id.* at 31. Thus, in order to establish a claim for breach of contract, "a plaintiff must prove, by a preponderance of the evidence, (1) the existence of a contract between itself and that defendant; (2) performance of the plaintiff's obligations under the contract; (3) breach of the contract by that defendant; and (4) damages to the plaintiff caused by that defendant's breach." *Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 52 (2d Cir. 2011). Based on the evidence presented at trial, the Court finds that

---

constitutes inadmissible hearsay that does not fall under the business records exception to hearsay. (Def. Post-Trial Mem. at 6–7.) However, as noted during trial (Tr. at 39:14–24), the Court holds that, through the direct testimony of DiSanto, Plaintiff laid the proper foundation to establish Exhibit 25's authenticity. (*See id.* at 25:17–28:12); *see also* Fed. R. Evid. 901(b)(1) (noting that a document can be authenticated through testimony of a witness with knowledge of the evidence). In addition, even though it took several years for DiSanto to find Exhibit 25, the Court finds that his direct testimony demonstrated that Exhibit 25 satisfied the business records exception to the hearsay rule. (*See, e.g.*, Tr. at 31:6–10 (noting that Exhibit 25 was kept in the regular course of business); *id.* at 34:25–35:8 (noting that the information in Exhibit 25 was inputted contemporaneously with the relevant transactions)); *see also United States v. Reyes*, 157 F.3d 949, 951 (2d Cir. 1998) (stating that the business records exception to hearsay applies to trustworthy, contemporaneous records made in the regular course of business by a person with knowledge, as demonstrated by "the testimony of the custodian or other qualified witness" (citing Fed. R. Evid. 803(6))).

Plaintiff has proven by a preponderance of the evidence each element of its breach of contract claim.

First, as previously discussed in the Court's March Opinion, Defendant accepted the bills of lading and became a party to each when it signed, endorsed, and presented them to Plaintiff. (March Opinion at 5.) Specifically, Defendant accepted the First BOL on October 8, 2008 and accepted the Second and Third BOLs on October 21, 2008, thereby becoming subject to the terms and conditions on the reverse side of each bill of lading, including that Defendant would be held "jointly and severally responsible for all freight and charges due under this Bill of Lading," such as demurrage and detention fees. (DiSanto Aff. ¶¶ 20, 24; BOL cls. 15, 19(4).) In making this finding, the Court relies on the express terms of each bill of lading, which stated that, by endorsing or presenting a bill of lading, "the endorsee/holder/transferee thereupon become[s] a party to a contract of carriage." (BOL cl. 28.)

The Court also finds that, despite Defendant's argument to the contrary, Defendant had ample notice of the terms and conditions on the reverse side of each bill of lading. First, as previously discussed, Orient Star sent Defendant the complete bills of lading, and, when the cargo arrived in New York, Defendant signed and endorsed each bill of lading *directly on top of* the terms and conditions. (Stip. ¶¶ 5, 8–9; DiSanto Aff. ¶ 38); *see also Hirsch v. Citibank, N.A.*, 542 F. App'x 35, 37 (2d Cir. 2013) (noting that "receipt of a physical document containing contract terms or notice thereof is frequently deemed, in the world of paper transactions, a sufficient circumstance to place the offeree on" notice); *id.* ("[A] party cannot avoid the terms of a contract on the ground that he or she failed to read it before signing." (internal quotation marks omitted)). Second, before October 2008, Defendant had endorsed and presented at least 90 bills of lading to Plaintiff that had the same terms and conditions as the bills of lading in the present case. (DiSanto

7

Aff. ¶ 40); *see also New Moon Shipping Co. v. MAN B&W Diesel AG*, 121 F.3d 24, 31 (2d Cir. 1997) ("Evidence of a prior course of dealing may establish a party's awareness of and consent to intended contractual terms."); *Maersk Inc. v. Am. Midwest Commodities Exp. Cos.*, No. 97-cv-0475 (NRB), 1998 WL 473945, at *4 (S.D.N.Y. Aug. 10, 1998) (finding that, "based on the prior contractual undertakings" with plaintiff, defendant "has no basis to assert that he had no notice of the terms of the bills of lading"). Third, Defendant's own publicly available tariff contained terms and conditions that were remarkably similar to Plaintiff's bills of lading. (DiSanto Aff. ¶ 50; PX 10.); *see Russul Corp. v. Zim Am. Integrated Shipping Servs. Co.*, No. 06-cv-0037 (JCF), 2009 WL 466149, at *4 (S.D.N.Y. Feb. 25, 2009) (finding that parties will be bound to a bill of lading when "the terms of the form of bill of lading were concededly known by the parties, and the parties clearly intended to be bound by the carrier's bill of lading form" (internal quotation marks omitted)). For example, Defendant's tariff includes consignee within the definition of merchant. (PX 10 cl. 2(c).) Finally, the front of each bill of lading noted that the terms and conditions were available at www.oocl.com. (DiSanto Aff. ¶ 26.).

Defendant attempts to argue that it did not have notice of the terms and conditions because it did not receive a copy of the complete bills of lading until *after* Plaintiff's vessel departed China. (Liu Aff. ¶¶ 15–17.) However, as demonstrated by the evidence described above, Defendant was no stranger to the terms and conditions on the bills of lading, and Defendant had ample opportunity to read those terms before it signed and endorsed each bill of lading. *See Anvil Knitwear, Inc. v. Crowley Am. Transp., Inc.*, No. 00-cv-3243 (NRB), 2001 WL 856607, at *2 (S.D.N.Y. July 27, 2001) ("It is not unusual to issue a bill of lading after a carrier has taken possession of cargo and courts have regularly held that this does not prevent parties from being bound by its terms.").

Accordingly, the Court does not find Liu's testimony that Defendant had no notice of the terms on the reverse side of the bills of lading to be credible.

Similarly, the Court rejects Defendant's argument that it was essentially tricked into signing the bills of lading and becoming a party to each one. Specifically, Liu asserts that Defendant had no right to take delivery of the cargo because Orient Star had not notified Defendant that the cargo could be released. (Liu Aff. ¶ 24.) Liu further contends that Defendant signed and endorsed the bills of lading pursuant to instructions from Orient Star, but only so that Plaintiff could *abandon* the cargo. (*Id.* ¶¶ 28, 30.) As a result, Liu claims that Defendant's endorsement and presentation of the bills of lading was a "surrender" of the bills of lading, rather than acceptance of them, designed to enable Plaintiff to abandon the cargo. (*Id.* ¶ 28.)

However, this argument is contradicted by the evidence, including the clear and express terms of the contract, which indicate that Defendant became a party to the contract by endorsing and presenting each bill of lading to Plaintiff. (*See* Tr. at 80:1–8 (Liu acknowledging that the terms and conditions in the bill of lading "set forth the obligations of the parties in the transaction")); *see also Red Ball Interior Demolition Corp. v. Palmadessa*, 173 F.3d 481, 484 (2d Cir. 1999) ("If a contract is clear, courts must take care not to alter or go beyond the express terms of the agreement, or to impose obligations on the parties that are not mandated by the unambiguous terms of the agreement itself."); *OT Afr. Line Ltd. v. First Class Shipping Corp.*, 124 F. Supp. 2d 817, 821 (S.D.N.Y. 2000) (noting that, under admiralty law, "testimony as to subjective intent" should not "be substituted for the plain meaning of a contract"). Also relevant is the fact that, prior to October 2008, Defendant had presented at least 90 bills of lading to Plaintiff for the release of cargo. (Tr. at 62:15–63:2.) Liu confirmed that the bills of lading at issue in this case contained the same terms and conditions as those 90 other bills of lading and that Defendant's signature on the bills of lading

9

was the same as well. (*Id.* at 65:4–16.)  Therefore, the Court cannot accept Liu's assertion that Defendant's endorsement and presentation of the bills of lading in this case should be treated differently from the 90 other bills of lading that Defendant had previously endorsed.  While Defendant insists that there are emails that support its theory that it signed the bill of lading, pursuant to instructions from Orient Star, only to abandon the cargo (*see* Def. Post-Trial Mem. at 15), Defendant has offered no evidence of such emails other than Liu's testimony, and the Court does not credit Liu's testimony in light of the absence of these emails.  (Tr. at 63:17–64:4, 90:12–21.)

Finally, Defendant attempts to reargue points made in its summary judgment motion that Defendant cannot become a party to a contract by merely being identified as a consignee on the bill of lading. (Doc. No. 71 at 4–5.)  Once again, this argument is foreclosed by the express terms of the bills of lading, which were *endorsed* by Defendant.  Defendant's related assertion that it cannot be liable for demurrage and detention fees because it never accepted or demanded delivery of the cargo (*id.* at 7) is equally unavailing.  As the Court held in its March Opinion, "whether a party accepted or demanded delivery is irrelevant to an analysis of whether a party is liable for demurrage and detention fees when, as here, a contract expressly provides that a party is liable." (March Opinion at 6); *see also In re M/V Rickmers Genoa Litig.*, 622 F. Supp. 2d 56, 70 n.17 (S.D.N.Y. 2009) ("[D]etermining whether a third-party buyer or consignee was actually bound to a bill of lading is a matter of contract construction and must be accomplished by examining the terms of bills of lading."), *aff'd sub nom.*, *Chem One, Ltd. v. M/V Rickmers Genoa,* 502 F. App'x 66 (2d Cir. 2012).  Accordingly, the Court finds that Plaintiff has proven the first element of its breach of contract claim – the existence of a valid contract between Plaintiff and Defendant – by a preponderance of the evidence.

The Court also holds that Plaintiff has proven by a preponderance of the evidence the remaining three elements of its breach of contract claim. First, Plaintiff has demonstrated that it successfully performed under the contract. As the ocean carrier, Plaintiff was required to timely transport four containers of plasterboard from China to New York in "good order and condition," and Defendant has offered no evidence to suggest that Plaintiff failed to successfully complete this task. (BOL preamble; DiSanto ¶ 15.) Second, Plaintiff has proven that Defendant – as a merchant defined under the bills of lading – breached each bill of lading by failing to pay demurrage and detention fees for the unclaimed cargo that sat on Plaintiff's vessel. (BOL cls. 2, 15, 19(4).) Finally, Plaintiff has proven that it incurred damages of more than $58,000 for demurrage and detention fees. (DiSanto Aff. ¶¶ 60–65; PX 11–17.) Accordingly, because Plaintiff has proven by a preponderance of the evidence each element of its breach of contract claim, the Court finds Defendant liable for breaching the three bills of lading.

### C. Account Stated

To assert an account stated claim, a plaintiff must demonstrate the existence of "a promise by a debtor to pay a stated sum of money which the parties had agreed upon as the amount due." *White Diamond Co. v. Castco, Inc.*, 436 F. Supp. 2d 615, 623 (S.D.N.Y. 2006). However, if a plaintiff can prove an enforceable contract and the plaintiff's account stated claim seeks the same relief as its breach of contract claim, the account stated claim may be dismissed as duplicative. *See Prof'l Merch. Advance Capital, LLC v. C Care Servs., LLC*, No. 13-cv-6562 (RJS), 2015 WL 4392081, at *6 (S.D.N.Y. July 15, 2015); *Media Tenor Int'l AG v. Medco Health Solutions, Inc.*, No. 13-cv-7223 (DLC), 2014 WL 2933215, at *8 (S.D.N.Y. June 27, 2014) ("If plaintiff can prove an enforceable contract, then it will be able to recover under that cause of action, and the account stated claim can be dismissed." (internal quotation marks omitted)). Therefore, because the Court has already found that Defendant is liable under Plaintiff's breach of contract claim, and because

Plaintiff seeks the same relief in both its account stated claim and its breach of contract claim (FAC ¶¶ 15, 19), the Court dismisses Plaintiff's account stated claim as duplicative.

### D.  Damages

In a breach of contract action, an injured party is "entitled to recover damages that are the 'natural and probable consequence of the breach.'" *APL Co. PTE v. Blue Water Shipping U.S. Inc.*, 592 F.3d 108, 111 (2d Cir. 2010).  Here, Plaintiff seeks $58,490, plus prejudgment interest, attorney's fees, and costs for its breach of contract claim.  The $58,490 request represents the total detention and demurrages fees that Plaintiff incurred while the unclaimed cargo sat on its vessel in New York.  (PX 17.)  However, this amount fails to take into account the $1,017 that Plaintiff ultimately received from the sale of the unclaimed cargo.  Accordingly, as Plaintiff has acknowledged, its damages award must be reduced by at least $1,017.  (Tr. at 37:22–38:2.)

Defendant argues that Plaintiff's damages award should be further reduced as a result of Plaintiff's failure to mitigate its damages.  (Liu Aff. ¶ 35; Def. Post-Trial Mem. at 8.)  Specifically, Defendant contends that Plaintiff took nearly three months – from August to November 2008 – to finally dispose of the unclaimed cargo, even though it knew that Defendant had been unable to contact the third-party buyer.  (*Id.*)  However, while a party injured by a breach of contract has "an obligation to make reasonable efforts to mitigate its damages and failure to do so may cause a court to lessen the recovery," *APL*, 592 F.3d at 111, the defendant bears the burden of proving by a preponderance of the evidence that a plaintiff failed to take such action, *see Air Et Chaleur, S.A. v. Janeway*, 757 F.2d 489, 494 (2d Cir. 1985).  Here, while Plaintiff waited until November 14, 2008 to dispose of the unclaimed cargo, Defendant has offered no evidence to demonstrate that Plaintiff failed to take reasonable steps in the interim.  Indeed, Plaintiff mitigated its damages when it moved the cargo to BK Logistics's truck terminal in October 2008 in order to reduce the detention costs.  (DiSanto Aff. ¶¶ 57–58; Tr. at 43:22–44:2 (DiSanto noting that Plaintiff moved

the cargo to "stop the bleeding").) Furthermore, as noted in the March Opinion, once Defendant presented the signed and endorsed bills of lading to Plaintiff, Defendant was deemed to have taken delivery of the cargo and therefore had the ability to sell or move the cargo to avoid additional fees. (March Opinion at 8; BOL cl. 13 ("If the Merchant fails to take delivery of the Goods, . . . the Goods shall be deemed to have been delivered to the Merchant.").) Therefore, "as the breaching party, [Defendant] was not entitled simply to shift any expenses or costs associated with the cargo disposal delay to [Plaintiff]. If [Defendant] had the same opportunity to avoid such costs, it had an obligation to do so." *APL*, 592 F.3d at 112. Accordingly, the Court finds that Defendant has not satisfied its burden of demonstrating that Plaintiff failed to mitigate its damages.

The Court also finds that Plaintiff is entitled to prejudgment interest. The Second Circuit has recognized that prejudgment interest should be awarded in admiralty cases absent exceptional circumstances and that calculating prejudgment interest is within "the broad discretion of the district court." *Mentor Ins. Co. (U.K.) v. Brannkasse*, 996 F.2d 506, 520 (2d Cir. 1993); *see also Mitsui & Co. v. Am. Exp. Lines, Inc.*, 636 F.2d 807, 823 (2d Cir. 1981). Because prejudgment interest serves "to fully compensate the wronged party for actual damages suffered," *Wickham Contracting Co. v. Local Union No. 3, Int'l Bhd. of Elec. Workers, AFL-CIO*, 955 F.2d 831, 834 (2d Cir. 1992), it is often "awarded from the time of injury," *Indep. Bulk Transp., Inc. v. Vessel Morania Abaco*, 676 F.2d 23, 25 (2d Cir. 1982). A prejudgment interest rate is usually "measured by interest on short-term, risk-free obligations," such as the average annual rate for a United States Treasury Bill. *N.Y. Marine & Gen. Ins. Co. v. Tradeline (L.L.C.)*, 266 F.3d 112, 131 (2d Cir. 2001).

Here, because Defendant has identified – and the Court is aware of – no exceptional circumstances that would preclude prejudgment interest, the Court finds that an award of

13

prejudgment interest is appropriate to fully compensate Plaintiff. Accordingly, Plaintiff is entitled to prejudgment interest based on the average annual United States Treasury Bill rate, from the date Plaintiff began accruing demurrage and detention charges on August 29, 2008 to the date of this Opinion and Order. *See Man Ferrostaal, Inc. v. M/V Akili*, 763 F. Supp. 2d 599, 614 (S.D.N.Y. 2011) ("Interest is intended as a cure for an actual loss of cash, and so should run from the time that the loss took place."); *see also id.* (noting that "an award of interest based on the average annual United States Treasury Bill rate is becoming more common in this Circuit").

Finally, the Court finds that Plaintiff is entitled to reasonable attorney's fees and costs. In keeping with the basic tenets of contract law, "attorney fees and costs may be awarded where . . . the bill of lading provides for the award of attorney fees." *See Maersk Inc. v. Alan Mktg., Inc.*, No. 97-cv-3495 (HB), 1998 WL 167323, at *3 (S.D.N.Y. Apr. 10, 1998). Here, the terms and conditions of each bill of lading expressly state that all merchants shall be liable for "any court costs, expenses and reasonable attorney fees incurred in collecting any sums due to [Plaintiff]." (BOL cl. 15.) As a result, the Court finds that Defendant, as a merchant, is liable for any court costs, expenses, and reasonable attorney's fees related to this action.

In sum, the Court finds that Plaintiff is entitled to an award of damages in the amount of $57,473, plus prejudgment interest, attorney's fees, and costs.

## V. CONCLUSION

For the reasons stated above, the Court finds in favor of Plaintiff for its breach of contract claim in the amount of $57,473, plus prejudgment interest, reasonable attorney's fees, and costs. The Court nevertheless dismisses Plaintiff's account stated claim as duplicative. IT IS HEREBY ORDERED THAT, no later than January 22, 2016, Plaintiff shall submit a proposed judgment pursuant to Rule 58 of the Federal Rules of Civil Procedure. IT IS FURTHER ORDERED THAT, also by January 22, 2016, Plaintiff shall submit an application for fees and costs to the Court,

including a sworn declaration providing counsel's background, experience, and billing rate at the time the work was expended, as well as copies of the attorney's time sheets. IT IS FURTHER ORDERED THAT, also by January 22, 2016, Defendant shall submit a proposal for prejudgment interest in accordance with the guidelines described in this Opinion and Order. Defendant may submit papers opposing Plaintiff's submissions no later than February 5, 2016.

SO ORDERED.

Dated:      December 23, 2015
            New York, New York

                                                    _____
                                                    RICHARD J. SULLIVAN
                                                    UNITED STATES DISTRICT JUDGE